Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-12-00002-CR

Roy Luis **RESENDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR2055
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:      Catherine Stone, Chief Justice
           Karen Angelini, Justice
           Marialyn Barnard, Justice

Delivered and Filed:  October 31, 2012

AFFIRMED

Pursuant to a plea-bargain agreement, Roy Luis Resendez pled no contest to having committed sexual assault and was placed on deferred adjudication community supervision for two years. He brings four issues on appeal: (1) his plea was not knowingly and voluntarily made because both his attorney and the trial judge improperly advised him of the law; (2) the trial judge erred in inaccurately advising him of his ability to apply for and obtain early termination of sex offender registration; (3) he received ineffective assistance of counsel because his counsel

inaccurately advised him of his ability to apply for and obtain early termination of sex offender registration; and (4) he received ineffective assistance of counsel because his trial counsel did not obtain a ruling on his motion for new trial before the trial judge lost plenary power. We affirm.

## BACKGROUND

On September 29, 2011, on the day of trial and as the venire panel congregated in the hallway, Resendez decided to accept the State's plea-bargain offer of two years deferred adjudication community supervision. The trial judge then properly admonished Resendez, and Resendez affirmatively stated that he was waiving his rights. The trial judge asked defense counsel if he believed Resendez had a factual and rational understanding of the charges pending against him:

Defense Counsel: Do you understand the charges against you?

Resendez: Yes.

Judge: And before we proceed any further, I'm seeing Mr. Resendez is a little anxious. Let me just put on the record that we have been here since this morning at approximately 10:00. I've had a jury panel of 63 potential jurors waiting outside in the hallway in anticipation of trying this case and proceeding to trial. I believe since it is after 2:15, I have tried to give both sides sufficient time to not only confer, but to also enter into a plea agreement that I understood Mr. Resendez was willingly entering into. And so Mr. Resendez, I just want to make sure that you understand what you're doing now is you're waiving that right. Okay. And that's what I'm asking your attorney and that's what he is asking you. Okay. So all the rights that you have, because you're accused of a criminal offense, you're waiving at this point. Do you understand that?

The defendant replied, "Yes." The trial judge then again asked defense counsel if he believed Resendez had a factual and rational understanding of the charges pending against him. Defense counsel answered, "He does, Your Honor." The judge then asked defense counsel if Resendez had been able to assist in his possible defense:

Defense counsel: Yes, he has, Judge. And we have gone over the plea agreement in great detail today. I explained to him, you know, the trial process, the rulings of

> evidence that can come in and things like this, and the complainant's evidence. I've also discussed with him that he would – that for him to take a plea, it was his plea, and he had to do it freely and voluntarily. And that the only way you could accept a plea is if he did it freely and voluntarily. And he understood that, and that's what he wants to do. And he is probably not thinking that's what he wants to do but he thinks under the circumstances it's appropriate.

The trial judge then asked if Resendez was mentally competent to enter into this agreement and waive all his rights. Defense counsel answered that there was no question in his mind that Resendez was mentally competent. After all of the judge's admonishments, Resendez pled no contest to the charge of sexual assault. The trial judge asked Resendez if he was pleading no contest because he had discussed it with his attorney and believed it was in his best interest. Resendez replied, "Yes." The trial judge asked Resendez if he had been threatened or forced into the plea agreement. Resendez replied, "No." The trial judge then asked if he had been promised anything in exchange for his plea. Resendez answered, "No."

After the State presented evidence of Resendez's guilt, the trial judge found sufficient evidence of his guilt but made no other finding at that time. Resendez then waived a pre-sentencing investigation and the trial judge proceeded to sentencing. The trial judge asked if there was anything else Resendez wanted to offer on his behalf before she imposed his sentence. Resendez's defense counsel stated that the State was recommending two years deferred adjudication, which was an appropriate sentence. Defense counsel noted that Resendez had spent twenty-seven months in jail and was currently on a monitor. Defense counsel asked the judge to remove the condition of the monitor and concluded with the following: "And hopefully he will not have to be on lifetime sex registration." The trial judge granted Resendez's application for deferred adjudication and placed him on community supervision for two years. The trial judge also ordered Resendez to comply with Chapter 62's sex registration requirements. The trial judge

asked if Resendez had any further questions. After confirming that he would be released and would have the monitor removed, Resendez asked the following:

> Resendez:  Also, like my lawyer said, is there a way later on – I don't know, is there any law that I can get off this sex offender registration or whatnot?
>
> Defense counsel:  There is a lot that came into effect on September 1st. It's a commission and it's a review board. There are some requirements. I don't know what the general requirement is. But obviously he has to be off the deferred. And I think deferred will help the fact.
>
> Court:  Sure.
>
> Defense Counsel:  I told him I would go over that with him when he finishes deferred.
>
> Court:  Right. Because it's not going to be at this point within my discretion to make that decision. I do think -- well, we will have to see what they do. But of the nature – based on the nature of the offense—I mean you basically got the minimum punishment you can get. And if there is a commission that is going to look into that, they certainly, I think, will take that into consideration. But I don't know what exactly what they are doing. It's not within my discretion at this point. And it's important that you do it as part of your deferred because I ordered you to comply with Chapter 62. If you don't, you will be looking at a whole new felony.
>
> Resendez:  That's like going to DPS [Department of Public Safety].
>
> Court:  They will talk to you – probation will talk to you about it, and they will let you know exactly what you need to be doing. But, yes, you are going to have to register as a sex offender. Every time you move, you need to re-register. You leave the city, you need to re-register. Okay. All right, sir. Good luck to you.

On October 28, 2011, Resendez timely filed a motion for new trial, arguing that his plea was involuntary because he believed he would not have a lifetime obligation for registration as a sex offender. On December 19, 2011, the trial judge held a hearing on the motion for new trial. At the hearing, Resendez's defense lawyer questioned him about why he had pled no contest:

> Q:  And I explained to you that I felt that the evidence could be sufficient for a jury to find you guilty based upon [the complainant's] testimony alone, and the fact that she had made an outcry to two individuals within a year; is that correct?
>
> A:  Yes.

Q: Okay and given those considerations, you also had a very good offer of two years deferred, which, if you went to trial, you knew that you could not get deferred adjudication if a jury found you guilty?

A: Yes, I understood.

Q: Okay. And the fact that we had a beneficial plea agreement and no fine, you decided to take it. But we discussed sexual registration, did we not?

A: Yes.

Q: And based upon that representation, is that one of the reasons you decided to take the plea?

A: That was one of the main reasons.

Q: You had expectation that you may be able to terminate your sexual registration after you completed your probation term?

A: Exactly.

On cross-examination, Resendez admitted that he had not been forced into taking the plea bargain. When asked if his defense counsel had guaranteed to him that at any point, he would be released from the sex offender registration requirement, Resendez replied, "No, he said I would be able to apply." Resendez's defense counsel then said the following to the trial judge:

> Judge, if I may state into the record that my representation of my client was based upon the fact that I was aware of some new provisions within the sexual – or within the registration codes. And that there – *the determination of lifetime registration was kind of up for debate somewhat.* And the decision would rest upon the counts of sex offender treatment, which has authority to consider applications for termination of sexual registration – lifetime registration. At the time I did not know which offenses were included or excluded. Since that time I've done some research. And it appears that contact sexual offenses, such as sexual assault, are excluded from that at the present moment. So, you know, I question whether or not my client had the correct information when he made the decision to plead guilty. Because one of the considerations he had obviously was whether or not he had lifetime registration. As it stands now, it appears that he is still under that provision. Because the offenses that are excluded are like compelling prostitution, indecent exposure, unlawful restraint of a victim under 17, indecency with a child by exposure, possession or promotion of child pornography, online solicitation of a minor, and indecency with a child. So those

are the only noncontact offenses that are currently being considered by the council on sex offenders in compliance with federal [law].

(emphasis added).

Defense counsel then called Shannon Jones, the manager of Bexar County Probation Department's sex offender program, to the stand. Jones testified to the following regarding early termination of sex offender registration:

> The application of the council – the council is in charge of the obligation – the council in sex offender treatment in Texas has worked with the legislature to determine which offenses. They compiled a list of offenses with which you can petition and be considered for early termination. That goes along with federal sentencing guidelines or registration obligations. The list of – that is referenced – there's not a list in the CCP because the council was tasked with making that list. The list that the council put together, that is, cases that they will consider for de-registration or early – which is early termination, the wording in the CCP is early termination of registration – are the noncontact cases. At this time, currently the council, who has been tasked with developing and licensing the treatment providers that even do any of the evaluations, any of the criteria, has been tasked – that's the list that they have come up with, the cases that they are considering for what we call de-registration. And those are the noncontact cases. We've had council – contact with the council *because it's an ongoing process*. There hasn't been – there's been a lot of work done; there's been a lot of effort put in to making sure the tools are correct on how the process works. *So it's a nonfinished product at this time. And it has been ongoing for a while*. . . . Allison Taylor, who is the director of the council, has basically assured me [that] these are the cases that can petition for early termination.

(emphasis added).

The trial judge then noted that she remembered having discussions about early termination during the plea hearing but could not remember exactly what had been said. She remembered defense council "reassuring" Resendez that he "could in fact early terminate." Based on her recollection, the trial judge orally granted Resendez's motion for new trial. Later, however, she determined that because seventy-five days had passed since she had imposed sentence, she had no authority to grant a new trial and signed an order stating, "Granted but lost plenary power." Resendez now appeals from the trial court's Order of Deferred Adjudication.

## DISCUSSION

Resendez's first three issues deal with what transpired during his plea and sentencing hearing. In his first issue, he argues that his plea was not knowingly and voluntarily made because both his attorney and the trial judge improperly advised him of the law. Resendez argues in his second issue that the trial judge erred in inaccurately advising him of his ability to apply for and obtain early termination of sex offender registration. In his third issue, he argues that his trial counsel was ineffective because his counsel inaccurately advised him of his ability to apply for and obtain early termination of sex offender registration. All three of these issues assume that Resendez's trial counsel and the trial judge did, in fact, inaccurately advise him of the law during the plea and sentencing hearing. However, in reviewing the record of the hearing, neither the trial judge nor defense counsel did any such thing. Defense counsel stated that "*hopefully* [Resendez] will not have to be on lifetime sex registration." (emphasis added). Defense counsel noted that there was "a lot that came into effect on September 1st," but that he did not know what the commission and review board would do. The trial judge stated that she did not know exactly what the commission was doing. And, she then reiterated that Resendez would have to register as a sex offender and re-register every time he moved. Neither the trial judge nor defense counsel inaccurately advised Resendez of the law.

Further, at the motion for new trial hearing, Shannon Jones testified that the Council on Sex Offender Treatment, which has been empowered by the legislature, had not yet determined which offenses would be eligible for early termination of the sex registration requirement and that the process was still ongoing. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.402, 62.404. Indeed, the Council on Sex Offender Treatment did not publish its list of offenses until April 2012, more than four months after the motion for new trial hearing. *See* Tex. Dep't of

- 7 -

State Health Servs., Council on Sex Offender Treatment Home Page, http://www.dshs.state.tx.us/csot/default.shtm (last visited Oct. 17, 2012); Tex. Dep't of Pub. Safety, Crime Records Service, Tex. Sex Offender Registration Program, *Tex. Offenses Tiered Under the Fed. Adam Walsh* (published April 2012), https://records.txdps.state.tx.us/DPS_WEB/SorNew/SORP-SORNA.pdf (last visited Oct. 17, 2012). Thus, even at the time of the motion for new trial hearing, it was not yet clear whether the offense for which Resendez had pled no contest would be an offense eligible for early termination of the sex offender registration requirements. Thus, the trial judge and defense counsel correctly advised Resendez that there was an ongoing process and that they did not yet know what the result would be. Resendez's first three issues are overruled.

In his fourth issue, Resendez argues that he received ineffective assistance of counsel because his trial counsel did not obtain a ruling on the motion for new trial during the trial court's plenary power to rule on the motion. We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986). The appellant must first show that his attorney's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, assuming the appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *Id.* Further, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's

conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Bone*, 77 S.W.3d at 833. Like the majority of cases, here, the record is undeveloped and does not reflect what Resendez's trial counsel did or did not do to secure a hearing on the motion for new trial. Resendez's fourth issue is overruled.

CONCLUSION

We affirm the trial court's Order of Deferred Adjudication.

Karen Angelini, Justice

Do not publish